IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN A. BOTEY, | : | |
| Plaintiff, | : | |
| v. | : | 3:12-CV-01520 |
| | : | (JUDGE MARIANI) |
| ROBERT D. GREEN, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion for Sanctions filed by the Plaintiff, Jonathan Botey, in the above-captioned action in response to alleged spoliation of evidence by Defendants Conwell Corporation and FFE Transportation Services. (See Mot. for Sanctions, Doc. 74). For the reasons that follow, the Court will grant in part and deny in part Plaintiff's motion.

### II. Procedural History

This action arises out of a traffic accident that occurred in Hazle Township on May 10, 2011. (See Compl., Doc. 1-2, at ¶ 7). The Complaint alleges that Plaintiff, Jonathan Botey, was traveling north in his car when Defendant Robert Green, a truck driver with Defendants Conwell Corporation and FFE Transportation, attempted to pull his tractor-trailer from a truck stop into the southbound lane of the roadway. (Id. at ¶¶ 7-8). This caused a collision in which Botey was seriously injured. (Id. at ¶ 11).

The parties originally planned to take Green's deposition during the normal discovery period. However, in February 2014, they learned that Green suffered from dementia and was therefore unable to be deposed. (*See* Oral Argument & Hearing Tr., Feb. 18, 2016, Doc. 120, at 20:8-22:5). Plaintiff then sought discovery from FFE of thirty days' worth of Green's trip documents and logs that FFE maintains for each of its truck drivers. (*See* Mot. to Compel Production of Docs., Doc. 61, at ¶ 3). He explained: "It is Plaintiff's position that Defendant Green was exhibiting signs of dementia prior to being allowed to drive the tractor trailer, and Plaintiff believes that 30-days worth of logs and trip documents would allow the Plaintiff to determine whether Defendant Green was having issues consistent with dementia." (*Id.* at ¶ 8). This would be relevant, Plaintiff argued, to establishing his claims against FFE and Conwell for negligence "in allowing Mr. Green to drive their vehicle when he lacked sufficient skill, judgment, and ability to safely do so." (*Id.* at ¶ 7). Defendants argued that Plaintiff was only entitled to logs going back 34 hours before the accident. (*See* Defs.' Reply Br. to Mot. to Compel, Doc. 64, at ¶ 3).

The Court heard argument by telephone on Plaintiff's Motion to Compel production of the thirty days of logs on January 6, 2015. After hearing arguments from both sides, the Court ordered Defendants to provide fifteen days of logs, as a reasonable compromise between the parties' positions. (*See* Teleconference Tr., Jan. 6, 2015, Doc. 115, at 10:4-20). The Court's Order provided that "Defendants shall produce logs, pre-trip inspections, and driver inspection vehicle reports for Defendant Robert D. Green for the 15 days prior to

2

May 10, 2011, as well as the corresponding trip and operational documents and GPS records for those 15 days." (Order, Jan. 6, 2015, Doc. 70, at 1). As stated by the Plaintiff, "[t]he net effect of this ruling would be that the Plaintiff would get an additional eleven . . . days of logs and all corresponding documents regarding the movement of the Defendant's tractor-trailer." (Doc. 74 at ¶ 30).

Defendants only produced four additional days of logs, not the full fifteen that the Court ordered. (Doc. 120 at 11:22-12:9). Plaintiff then filed a Motion for Sanctions (Doc. 74), which requested "that an adverse inference jury instruction be read against Defendants at the time of trial" as well as "an Order precluding Defendants from arguing in dispositive motions that Plaintiff lacks evidence to prove his corporate negligence claims against Defendants FFE and Conwell based on the documents destroyed." (Doc. 74, at 12). The Court held an evidentiary hearing and oral argument on this Motion on February 18, 2016.

### III. Factual Background

Defendants agree that FFE's duty to preserve documents began at the time that they received notice that an accident occurred. (*See* Doc. 120 at 13:16-19). In this case, that day was May 10, 2011: the day of the accident at issue. (*Id.* at 13:19-20).

Mark Rhea, FFE's Vice President, testified that FFE uses a system called "People Net" to maintain drivers' logs. (Doc. 120 at 29:14-30:5). People Net works off of "a mobile communication device that is mounted in the cab of the truck that communicates with the driver and the general office," sending messages back and forth and keeping electronic logs

3

of the driver's activity. (*Id.* at 30:1-5). The electronic logs are saved at a database at People Net's corporate office in Minneapolis, Minnesota for a period of six months. (*Id.* at 30:8-9). Once a log entry becomes six months old, it is automatically deleted, such that at all times People Net maintains a record of all drivers' logs going back exactly six months from the current date. (*Id.* at 30:8-14). In other words, "it's a rolling, automated deletion." (*Id.* at 30:13-14). Only People Net, and not FFE, has the power to delete electronic logs. (*See id.* at 30:15-22). The only way that FFE could preserve logs is to make a request through People Net. (*Id.* at 31:8-11). FFE only maintains logs for six months because it believes that that is the length of time required by the Federal Motor Carrier's Administration. (*Id.* at 44:15-21).

On October 10, 2011, Plaintiff's attorney sent letters by certified mail to FFE, Conwell, and Green informing them of the litigation. (*See generally* Pl.'s Mot. for Sanctions, Ex. B, Doc. 74-2). The letters recited the requirements of section 395.8(k) of the Federal Motor Carrier Safety Regulations,[1] and concluded,

> Therefore, please be advised that you are not to destroy the following records:
> 1. Driver's logs for the six months preceding the collision;
> 2. Co-driver's logs for the same period if team driving;

---

[1] Pursuant to 49 C.F.R. § 395.8(k), entitled "Retention of driver's record of duty status",
(1) Each motor carrier shall maintain records of duty status and all supporting documents for each driver it employs for a period of six months from the date of receipt.
(2) The driver shall retain a copy of each record of duty status for the previous 7 consecutive days which shall be in his/her possession and available for inspection while on duty.
49 C.F.R. § 395.8(k).

4

3. The driver qualification file, and all incident reports involving the driver;
4. All 70 hour and other compliance audits of the drive (and co-driver if applicable);
5. All trip receipts, weight tickets, bills of lading, and operational documents that could be used to conduct log audits and verify log accuracy;
6. Satellite tracking information for the six month period prior to the crash;
7. Bills and statements from Com Data or similar expense/cash advance services used by the carrier;
8. All information contained in or retrieved from onboard data records (ECM units or black boxes);
9. E-mail and other communications between the driver and dispatcher or carrier;
10. All maintenance records, pre-trip inspection reports, post trip inspection reports, and annual inspection records; and
11. The tractor-trailer itself, or at a minimum, relevant portions of the equipment, if there is any evidence or allegation that equipment malfunction or failure played a role in the collision;
12. Any documents evidencing method of payment made to the driver including, but not limited to payroll records, time cards, and any and all records that may pertain to this incident or the parties involved.

(*See id.* at 2 (FFE), 4 (Conwell), 5-6 (Green)).

The letters to FFE and Conwell were both sent to an address in Norman, Oklahoma. (*Id.* at 1 (FFE), 3 (Conwell)).[2] The parties agree that FFE and Conwell's principal place of business is in Dallas, Texas. (*See* Compl. at ¶¶ 2-3; Answ., Doc. 4, at ¶¶ 2-3). Nonetheless, FFE does operate a small "administrative office" out of the Norman address, staffed by three employees. (*See* Doc. 120 at 33:10-15). One of these employees, Blanche Fernandez, signed the return receipt for the letters sent to FFE and Conwell on October 14,

---

[2] The letter to Green has no bearing on the spoliation issue.

2011. (*See* Pl.'s Mot. for Sanctions, Ex. C, Doc. 74-3, at 1 (FFE), 2 (Conwell)). Mark Rhea knew Ms. Fernandez personally and testified that she worked at the Norman office at the time the letters were sent. (Doc. 120 at 33:20-34:4). She "was a clerk that worked for a specialized fleet," i.e., who "monitored and audited temperatures for the specialized fleet [of about twelve trucks] that operated out of Norman, Oklahoma." (*Id.* at 34:5-10).

For reasons unknown, neither Ms. Fernandez nor her associates ever forwarded the letters to corporate headquarters. (*Id.* at 54:15-55:3). Had the letter been forwarded to "the right hands in Dallas," Rhea testified that FFE could have gone into People Net and preserved all records going back six months, i.e., to April 14, 2011 at the earliest, which would have encompassed all of the records subject to this spoliation dispute. (Doc. 120 at 36:20-37:12). Rhea testified that he "wish[es]" that FFE had heeded the preservation letter "because we had nothing to hide here" but that it simply got lost after receipt in Norman. (*Id.* at 54:21-55:1). He could offer no explanation for the loss. (*Id.* at 54:21-55:3).

Defendants note that none of these letters show that they were cc'd to anyone, such as their attorney. (*Id.* at 35:20-36:2). Defendants' attorney admits that "a separate cover letter, [ ] not on letterhead, that's dated the same time" has been produced that was allegedly mailed to his law firm. (*Id.* at 36:3-5; *see also id.* at 16:2-15). Nonetheless, he represents "that we never received that" either. (*Id.* at 36:6-7).

Regardless of FFE's claims that it "never got" the letters, the record evidence demonstrates that the letters sent to FFE and Conwell were received at an FFE facility and

6

signed for by a FFE employee, and FFE was thus on legal notice that certain records must be preserved for the purpose of Botey's litigation. Therefore, FFE had a responsibility to place a litigation hold on Green's file. The fact that it did not do so could constitute, but is not necessarily, sanctionable conduct.

## IV. Standard of Review

A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994). The duty arises whenever "the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518 (D.N.J. 2008) (citing *Joe Hand Promotions v. Sports Page Cafe*, 940 F.Supp. 102, 104 n.13 (D.N.J.1996); *Baliotis*, 870 F.Supp. at 1290).

Under Pennsylvania law, to determine the penalty for a spoliation of evidence claim, Plaintiff must show (1) the degree of fault of Defendant in altering or destroying the evidence (2) the degree of prejudice Plaintiff has suffered, and (3) the availability of a lesser sanction that will protect Defendant's rights and deter future similar conduct. *Schroeder v. Commonwealth of Pa.*, 710 A.2d 23, 27 (Pa. 1998) (adopting the Third Circuit's approach in *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d Cir. 1994) in design defect case). Although a party's motive for destroying evidence is relevant in determining the appropriate

sanction, if any, a finding of "bad faith" or "evil motive" is not necessary. *Baliotis*, 870 F.Supp. at 1291.

## V. <u>Analysis</u>

Defendants acknowledge that FFE's duty to preserve documents began at the time that they received notice that an accident occurred, i.e. May 10, 2011. (*Id.* at 13:16-20). Further, this Court has found that the letters sent to FFE and Conwell were received at an FFE facility and signed for by a FFE employee in October, 2011, and FFE was thus on legal notice that certain records must be preserved for litigation.

Although Defendants contend that they only had a duty to maintain six months of driver's logs, Plaintiff argues that FFE was actually required to maintain these logs for three years, a reference to the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 379, Appendix A, K.2.[3] (*See* Pl.'s Supplementary Br. in Supp. of Mot. for Sanctions, Doc. 122, at 5). However, Plaintiff admits that "the distinction between the six month and three year retention periods is not dispositive of the issue before this Court" because "Plaintiff's preservation letters were sent to the Defendants within a matter of days following the accident and then again five months after the subject accident." (*Id.* at 6). Because Green only worked for FFE for approximately three months prior to the accident (*see id.* at 9; Doc. 120, at 111:22), the question of whether Defendants should have preserved six months or

---

[3] Appendix A, K.2 of 49 C.F.R. § 379 currently requires trucking companies to maintain for six months of "[s]upporting data for periodical reports of accidents, inspections, tests, hours of service, repairs, etc." However, the six month period was only imposed effective October 1, 2012. *See* Technical, Organization, and Conforming Amendments to the Federal Motor Carrier Safety Regulations, 77 Fed. Reg. 59818, 59824 (Oct. 1, 2012). Before this, i.e., at the time of the accident, the requirement was three years.

8

three years of certain records is largely irrelevant. (*See also*, Testimony of Expert Witness Whitney Morgan, Doc. 120).[4] Whether the records should have been preserved for three years as opposed to six months is further of minimal importance because Plaintiff ignores the fact that this Court's January 6, 2015 Order only required Defendants to produce records "for the 15 days prior to May 10, 2011." (Doc. 70). Thus, at issue for purposes of this motion is only the several days of missing records, which as discussed above, the Court has already found Defendant was under a legal duty to preserve.

As a result, the Court must determine whether Defendants' affirmative duty to preserve the evidence, and their failure to do so, requires a finding of spoliation and that an appropriate penalty be imposed on them.

Plaintiff's need for the destroyed records arises from his contention, and attempt to establish, that Green was suffering from dementia at the time of the accident. The first record indicating that Defendant Green suffers from dementia appears to be Nurse Practitioner Alan Swartz's Progress Notes, dated November 8, 2012, which note that Green "[s]tates [he] starts talking and forgets what is being said[;] getting worse over the last several years." (Doc. 77-3). Swartz' observations were therefore noted approximately a

---

[4] During Plaintiff's examination of his expert witness, the following exchange took place:
MUNLEY: So the information that we were seeking in October of 2011 should have been retained by the company for a period of three years, not six months?
MORGAN: Yes. But in this instance, the driver had only been with FFE for a period of a few months, so it shouldn't have been overly burdensome for FFE to have maintained the records for this driver, because they couldn't even go back six months, much less three years, they only had to go back a few months.
(Doc. 120, at 65:15-22).

9

year and a half after the accident and it is unclear that Green was even diagnosed with dementia at that time. However, Plaintiff argues that Green was showing signs of dementia well-prior to the time of his diagnosis. (Doc. 75, at 10-11). Thus, Plaintiff's request for the information he now contends was spoliated arose from a "need to look further back in the records to see whether or not there's evidence contained within the logbooks, toll receipts, bills of lading or things of that nature, which would show that Mr. Green was exhibiting further signs of dementia by continuing to get lost or to deliver his loads late or things of that nature." (Doc. 115, at 5:23-6:3).

During Oral Argument, Defendants conceded that Green received negative reviews during his driver training, that one of his trainers demanded that Green be fired, that Green ran a stop sign at one point, and "got lost or didn't follow directions well." (*See, e.g.* Doc. 120, at 24:13-25:24). Although these admissions could lend some credence to Plaintiff's contentions, the crux of Plaintiff's argument is that Green was getting lost while driving in the weeks leading up to the accident and that this is indicative of cognitive difficulties. (*See generally, e.g.*, Testimony of Expert Witness Whitney Morgan, Doc. 120 (explaining that Green went over 100 miles out of his way on the trip in question and approximately 500 miles out of his way on trip immediately before). While the Plaintiff did not have access to all of Green's driving logs, counsel pieced together two routes that Green took by using weigh station records, fuel receipts, and other tracking information. (*Id.*). The routes, which Plaintiff's counsel provided to the Court in the form of poster boards during the Oral

Argument, demonstrate that Green took large, seemingly unnecessary detours along a different highway from the most direct route and then looped back into the most direct route farther along his trips. Morgan's testimony indicates that Green's actions would be inappropriate and waste company money and the parties appeared to agree at the evidentiary hearing that Green should not have taken these detours.

Despite the above evidence and admissions, under the three prongs set forth in *Schroeder*, the Court rejects Plaintiff's argument that the missing documents rise to the level of spoliation by the Defendants.

The focus of the parties' arguments is on the adverse inference sanction. Although the Defendants were on legal notice that certain records must be preserved for litigation, and thus erred in not preserving the requested documents upon receiving the litigation hold letter, Plaintiff has not shown that he is entitled to the "adverse inference" sanction.

Preliminarily, Plaintiff does not explain what "adverse inference" he wants. It is too great a leap to conclude that, if the destroyed records were preserved, they would have shown such evidence of a loss by Green of his mental faculties that Defendants would have been placed on notice that he was suffering from dementia and was likely to cause accidents and therefore advance Plaintiff's negligence claims against FFE and Conwell. The Court will thus deny any request that it provide an instruction to the jury that the destroyed evidence would have been adverse to the Defendants as it would have shown evidence of Green suffering from dementia at the time of the accident, or more generally,

that the jury should or could adopt the Plaintiff's interpretation of what the documents would have demonstrated. To the extent that this is not the adverse inference Plaintiff seeks, the Court will also deny any other adverse sanction inference at this time given that Plaintiff fails to clarify or narrow his request, and the Court is unable to determine what Plaintiff is seeking.

Even assuming that the destroyed records would in some way negatively reflect on Green's driving, Plaintiff does not contend that the missing records would show other accidents or safety violations. Rather, Plaintiff argues that the absence of these records is prejudicial to him because "we're not going to be able to show exactly what occurred on those trips, and that he was, in fact, getting lost, if he was, in fact, getting lost." (Doc. 120, at 96:7-16). It is unclear why or how Green's alleged tendency to get lost would put FFE on notice that Green was more likely to make dangerous turns into traffic. Plaintiff's counsel admitted that he was not "suggesting that the trucking company should have diagnosed Mr. Green with dementia." (Doc. 120, at 75:22-23; 98:25-99:3). However, while Plaintiff couches his need for the purged records in terms of helping to prove his negligence claim against the Defendants in that "they should have been watching him" and they "dropped the ball" and "negligently instructed him and didn't supervise him in a proper way when he was having" difficulties in training (see Doc. 120, at 99:3-100:7), Plaintiff's actual request for the missing records was an attempt to establish that Green was exhibiting signs of dementia at the time of the accident at issue. According to Plaintiff, he is "prejudiced in proving his

negligence claims against Defendants as the documents encompassed by the Court's January 6, 2015 Order would show whether or not Defendant Green was having cognitive issues while driving and whether Defendants FFE and Conwell would have been aware of these issues." (Doc. 75, at 10-11).[5] However, as Defendants point out, in May of 2011, Green had been "cleared by a medical doctor, in accordance with the Federal Motor Carrier's Safety Act, had a valid Med cert card and underwent that examination and was allowed to drive, in accordance with the regulations." (Doc. 120, at 22:24-23:3). Defendants state that they only received notice that Green was suffering from dementia in February, 2014. (Doc. 120, at 20:8-16). Any argument that they allowed records to be destroyed in an attempt to hide evidence of cognitive deficiencies on Green's part is therefore entirely unconvincing.

Nonetheless, while the Court will not grant Plaintiff's request for an adverse inference, it is only logical and fair that Defendants will not be allowed to rely on the missing records in support of any dispositive motions. This is for obvious reasons: Defendants cannot claim that information in records that was destroyed would exonerate them and expect the Court to permit such an argument.

Accordingly, although the Defendants were at fault for not preserving the requested documents, this appears to be mainly carelessness in *failing to preserve* documents from

---

[5] In Plaintiff's Answer to Defendants' Statement of Material Facts, submitted in response to Defendants' motion for summary judgment, Plaintiff states that he "sought and this Court permitted discovery of logbooks which were ultimately destroyed . . . [and] that these logs would show such violations and dangerous behavior as well as further signs of Defendant Green's progressive dementia." (Doc. 109, at ¶ 17).

13

destruction in the ordinary course of business. There is no indication that such a failure even approached the level of intentionality. The Court does not want to minimize Defendants' negligence and does recognize that Plaintiff need not show bad faith to prevail. However, losing preservation letters and then allowing documents and information to be purged from People Net is different from actively destroying relevant and pertinent documents. This is particularly the case where, as here, nothing in the record shows Green's dementia or any sign of it was within the knowledge of FFE at the time the records were routinely purged by People Net.

With respect to the second *Schroeder* factor, the degree of prejudice to the Plaintiff is light. As previously stated, Plaintiff does not contend that the missing records would show other accidents or safety violations. The Court is not precluding the Plaintiff from advancing any argument for liability on any of his causes of action by this Opinion, which is limited to the sole question of whether the Defendants engaged in spoliation, and if so, an appropriate penalty. Plaintiff is free to assert whatever record evidence he chooses which relates to the documented deficiencies on the part of Green in connection with his truck operating duties and his adherence, or lack thereof, to the applicable company rules.

Therefore, not allowing Defendants to rely on the destroyed records or other evidence designed to show their contents is the appropriate resolution of the issues raised by Plaintiff as a result of Defendants' inactions. Therefore, the Court will deny Plaintiff's motion insofar as it seeks an adverse inference but will not allow the Defendants to prove

the contents of the destroyed documents by other means or argue their contents in dispositive motions or at trial.

## VI. Conclusion

For the foregoing reasons, Plaintiff's Motion for Sanctions (Doc. 74) will be granted in part and denied in part. A separate Order follows.

_____
Robert D. Mariani
United States District Judge