# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN BOTEY, | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | 3:12-CV-1520 |
| | : | (JUDGE MARIANI) |
| ROBERT GREEN, et al., | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

Presently before the Court are Plaintiff's following motions in limine:

1. Motion to Preclude the Testimony and Opinions of Defendants' Expert David J. Schretlen, PH.D, ABPP/CN (Doc. 197);

2. Motion to Preclude Defendants' Expert V. Benjamin Nakkache, M.D., F.A.C.S. From Testifying as to Irrelevant Matters (Doc. 195);

3. Motion to Preclude Defendants' Expert Leon Feazell (Doc. 191).

The Court will address each request in turn. Before doing so, however, the Court notes at the outset that it exercises its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While motions in limine may serve as a useful pretrial tool that enables a more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity."

*Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *Japanese Elec. Prods.*, 723 F.2d at 260).

"[M]otions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemetech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Specifically, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis original). Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).

With these principles in mind, the Court now turns to Plaintiff's motions.

### 1. Standard for Assessing Expert Testimony

The Rules of Evidence, and Rule 702 in particular, assign the trial Court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Pursuant to Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The inquiry under Rule 702 is "a flexible one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). The overarching subject of the Rule is "the scientific validity and thus the evidentiary relevance and reliability - of the principles that underlie a proposed submission." *Id.* at 594-595.[1]

Furthermore, Rule 703 is instructive.

> An expert may base on opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Finally, in assessing a proffer of expert testimony under Rule 702, a Court must also take into consideration other applicable rules, including Rules 703, 706, and 403. *Daubert*, 509 U.S. at 595.

---

[1] Although *Daubert* held that Rule 702 imposes an obligation on the Court to "ensure that any and all scientific testimony . . . is not only relevant, but reliable", this gatekeeping obligation has subsequently been extended to all expert testimony and is not limited only to "scientific" testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

3

## 2. Motion to Preclude the Testimony and Opinions of Defendants' Expert David J. Schretlen, PH.D, ABPP/CN (Doc. 197)

Plaintiff's motion in limine requests that the Court preclude Dr. Schretlen from testifying as to "irrelevant matters." Plaintiff contends that "Dr. Schretlen's report sets forth numerous irrelevant matters regarding Plaintiff Jonathan Botey's family history, social history, medical, psychiatric & substance use history." (Doc. 198, at 5). Plaintiff asserts that many of these matters were not relied on by Dr. Schretlen in reaching the conclusions set forth in his report and that the matters "are highly prejudicial and designed to confuse and mislead the jury as well as embarrass the Plaintiff in this action." (*Id.* at 7).[2] Notably, Plaintiff is not questioning Dr. Schretlen's qualifications or the principles and methodology underlying his opinion. Instead, Plaintiff challenges the Doctor's reference to "irrelevant matter".

In the present action, Plaintiff's Amended Complaint, among other allegations, asserts that as a result of the accident,

> Botey has suffered, yet suffers and will/may suffer for an indefinite time in the future injuries including but not limited to a right ankle sprain, broken nose, broken Maxilla bone, concussion, internal hemorrhaging in the brain, back pain, severe neck pain, *memory loss*, and injuries to his mouth and teeth, including the loss of teeth, *all of which caused him, continue to cause him and will/may cause him for an indefinite time in the future great pain, agony and suffering, both physical and mental.*

---

[2] In two sentences, Plaintiff also briefly argues that because Dr. Schretlen is a psychologist, he is not qualified to offer any opinions regarding Botey's physical health. (*See* Doc. 198, at 7). Plaintiff does not point to any part of Dr. Schretlen's Report where he offers an opinion as to Botey's physical health; rather, it appears that the Doctor's statements regarding Botey's physical health are limited to summaries and observations of other doctor's findings or of information provided by Botey himself. The Court therefore finds no merit to Plaintiff's argument.

4

(Doc. 1-2, at ¶ 13) (emphasis added). Plaintiff further asserts that "[a]s a result of the . . . accident and injuries sustained . . . Botey has been, yet is and will/may for an indefinite time in the future be forced to forego the pleasures of life." (*Id.* at ¶ 16). Plaintiff's pre-trial memorandum confirms that he is seeking damages for a number of cognitive and psychological impairments, including "cognitive impairments of attention, concentration and executive functions", anterograde and retrograde amnesia, and memory impairments. (Doc. 257, at 10-15).

Plaintiff's claims of the various cognitive and psychological harms that have afflicted him since the incident at issue in this case, and that the damages sought in this case are the result of the defendants' actions, places at issue the causal relationship, if any, between the cognitive damages he alleges he suffered and the conduct of the defendants about which he complains. Therefore, because Botey has set forth his claims of psychological and cognitive harm, including ongoing agony and suffering as well as impairments to his attention, concentration and executive functions, as a result of Defendants' negligence toward him, Defendants are entitled to come forward with evidence, including expert testimony, demonstrating that Botey suffered from some, or all, of the complained of impairments prior to the time of the event giving rise to his cause of action.

Nonetheless, Defendants' ability to produce evidence of prior psychological and cognitive impairments is not without limits. Dr. Schretlen's report, at page 2, contains a section entitled "Family History". This history briefly outlines several members of Botey's

5

family and provides a basic summary of Botey's early life. With the exception of one sentence in the "Family History" section, a review of Dr. Schretlen's opinions, found on pages 15-20 of his report, shows that they do not appear related to, nor do they show that, the Doctor relied on the information outlined in this section when forming his opinions. The "Family History" information lacks relevance and further is not the product of scientific, technical, or other specialized knowledge which will help the trier of fact to understand the evidence or to determine a fact in issue. However, while Dr. Schretlen will be precluded from testifying as to the large majority of the information set forth in "Family History", he will not be precluded from offering the final sentence of this section, specifically that "[Botey's] mother said that she and her brother were both extremely energetic and distractible as children, like the plaintiff." Because this sentence provides an insight into *Botey's* state of mind as a child, namely that he was energetic and distractible, this is highly relevant to Dr. Schretlen's later findings that, to the extent Botey has a "mild cognitive disorder", it is "almost certainly due to ADHD, epilepsy, or some other cause" and that Botey "still shows some" childhood behaviors "that are very characteristic of ADHD." (*See* Dr. Schretlen Report, at 19).

For the same reasons discussed above, Dr. Schretlen's statements in the first paragraph of the section entitled "Social History" which discusses Botey's parents' divorce and references Botey's step-father will be precluded. Also due to lack of relevance and lack of any showing that Dr. Schretlen's opinions were formed on this basis, the comments in the

6

final paragraph in "Social History" which state that Botey "has never had a sexual relationship" and that Laurie, a woman Botey briefly dated, may have broken up with him "after realizing that his mother would accompany them on date, this being a humorous reference to Mr. Botey's 'very close' relationship with his mother", will be precluded.

However, despite Plaintiff's objections that Dr. Schretlen's list of Botey's prior employment should be precluded (Doc. 198, 5-6), Plaintiff has not established, nor explained, how this information is not relevant, particularly in light of the fact that a portion of the damages claimed by Botey are the result of his alleged lack of future employment. Thus, his employment in the past is highly relevant to his ability to obtain future employment and the nature of his future job prospects. In addition, the information arguably contributed to Dr. Schretlen's conclusion that Plaintiff is capable of working full-time and becoming fully self-supporting. (*See* Dr. Schretlen Report, at 20).

Plaintiff further asserts that Dr. Schretlen's statements detailing prior medical conditions including, but not limited to, a sprained ankle, x-rays suggestive of Osgood-Schlatter disease, x-rays of his wrist following another accident, difficulty breathing, asthma, toothaches, and pain in his upper back and neck are irrelevant and not relied on by Dr. Schretlen in reaching his conclusions as well as being highly prejudicial, confusing, and embarrassing to the Plaintiff. (Doc. 198, at 6-7).

First, just as with this Court's discussion of Plaintiff's decision with respect to Botey setting forth claims of psychological and cognitive harm and Defendants' ability to place

7

these assertions at issue, the same is true for Botey's physical issues. Botey claims a wide array of physical harms that allegedly arose as a result of the accident. Defendants therefore should not be precluded from offering evidence, including expert testimony, that Plaintiff suffered from some, or all, of these physical impediments prior to the incident at issue, or, for purposes of assessing damages, Plaintiff's future employment prospects, and Plaintiff's physical state prior to the incident. Second, Dr. Schretlen does not opine that the prior physical injuries are the cause of Plaintiff's current physical injuries, but rather uses this information to explain Plaintiff's state of mind since the time of the accident, including that Botey "displays abnormal illness behavior in the form of his excessive focus on physical symptoms and health concerns" and that his "abnormal illness behavior contributes to his perception of himself as handicapped by poor health." (Dr. Schretlen Report, at 19). Botey's prior medical history provides the jury with a foundation to understand these findings by the Doctor. For these reasons, Dr. Schretlen's expertise and the information provided in his report is helpful in assisting the trier of fact to understand the evidence and determine one or more facts at issue, as well as being probative of the issues in this case. Further, Plaintiff has not shown how any of this information is unfairly prejudicial, and therefore a Rule 403 analysis weighs in favor of allowing this evidence.

However, the Court will reserve on Plaintiff's request that Dr. Schretlen's report "notes that Mr. Botey <u>might have</u> struggled with depression and was evaluated for thoughts of suicide in the past." (Doc. 198, at 6) (underline in original). Plaintiff's characterization of

8

Dr. Schretlen's statement is not fully supported by the report. The Doctor's report recounts an incident in 2007 when Botey was taken to the hospital "for evaluation and treatment of depression and thoughts of suicide." (Dr. Schretlen Report, at 5). It lacks the ambiguity suggested by Plaintiff. Nonetheless, Dr. Schetlen's Report also opines that he does "not believe that Mr. Botey has clinical depression." (*Id*. at 19). An incident wherein a person is considered suicidal certainly may carry a substantial amount of prejudice. Here, the Doctor does not opine, or offer any foundation for an opinion that, Botey suffered from suicidal thoughts or depression in 2011 or that Botey currently suffers from depression which may have arisen prior to the accident. Therefore, although the Court will reserve ruling on the admissibility of evidence relating to Botey's 2007 incident, should Defendants attempt to introduce such evidence, they must demonstrate a nexus between that incident and Botey's state of mind at the time of the accident or since the accident, the probative value of which is not substantially outweighed by the danger of unfair prejudice.

Finally, Plaintiff asserts that Dr. Schretlen "must be precluded from offering speculative testimony not supported by facts of record." (Doc. 198, at 7). Specifically, Plaintiff asserts the following two statements in the Doctor's report are "pure speculation" (*id*.):

> The fact that [Botey] missed 19 English classes two years *before* his accident suggests that he simply did not like English classes.
>
> Mr. Botey has lived with his mother his entire life, so there is little reason to assume he ever learned how to pay bills in the first place.

9

(*See* Dr. Schretlen Report, at 16, 17) (emphasis in original).

The Court will reserve ruling on both of these statements. The Court must wait until the time of trial to hear the testimony Dr. Schretlen. Because these statements require further explanation, they will be subject to an objection at the appropriate time during Dr. Schretlen's testimony should he not have laid a sufficient foundation for these statements.

For the foregoing reasons, Plaintiff's motion will be decided as set forth above.

### 3. Motion to Preclude Defendants' Expert V. Benjamin Nakkache, M.D., F.A.C.S. From Testifying as to Irrelevant Matters (Doc. 195)

Plaintiff's next motion in limine requests that Dr. Nakkache be precluded from referencing a 2007 incident where Plaintiff was taken to the emergency room for a mental consultation and suicidal ideations. (Doc. 196, at 5-6). Although Plaintiff does not provide a citation to the specific part of Dr. Nakkache's report to which he objects, a review of the report reveals only one sentence which may be at issue; namely, Dr. Nakkache's statement that "[i]n another report from the same center back from 2007 where [Botey] was taken for a mental consultation, as apparently there was some issues of the patient having suicidal ideations." (Dr. Nakkache Report, at 2).

The Court first notes that Plaintiff is not questioning Dr. Nakkache's qualifications or the principles and methodology underlying his opinion. Instead, Plaintiff only challenges the Doctor's reference to the 2007 incident.

Here, an incident wherein a person is considered suicidal certainly may carry a substantial amount of prejudice. Additionally, allowing the Doctor to reference an earlier

10

suicide attempt risks confusing the scientific evidence and the basis for the Doctor's opinion, in addition to confusing the issue of what evidence is relevant to the degree of fault of Botey and Green for the 2011 incident.

Plaintiff and Defendants arguments go to separate issues. Defendants assert that Dr. Nakkache "consistently cites to Plaintiff's pre-existing mental problems and their relation to Plaintiff's ultimate recovery." (Doc. 202, at 6). However, Plaintiff's objection is premised on a concern that Botey's prior suicidal ideations and hospital visit will be used to imply that Botey was suicidal on the day of the crash in 2011, i.e. that Defendants will use this information to infer that Botey was the cause of the incident. Dr. Nakkache's expert report is the result of an independent medical examination which details his opinions with respect to Plaintiff's injuries and Plaintiff's progress in his recovery as well as his future ability to continue to recover. The report does not, in any way, discuss causation or Plaintiff's state of mind on the day of the accident and Doctor Nakkache does not opine, or offer any foundation for an opinion that, Botey suffered from suicidal thoughts in 2011.

Therefore, although the defendants are correct that under Rule 703, an expert may base an opinion on facts or data in the case that the expert has been made aware of, the defendants fail to engage in a Rule 403 analysis and ignore the highly prejudicial nature of allowing a reference to a suicide attempt. While Defendants point to Dr. Nakkache's repeated references to Botey's "significant pre-existing" mental problems or condition(s),

11

such generalized statements, without more, are insufficient to justify the admission of a highly prejudicial statement.

Thus, the Court will reserve ruling on the admissibility of evidence relating to Botey's 2007 incident. Should Defendants attempt to introduce such evidence, they must demonstrate a nexus between that incident and Botey's state of mind at the time of the accident or between Botey's suicide attempt and his current cognitive or psychological issues, the probative value of which is not substantially outweighed by the danger of unfair prejudice.

### 4. Motion to Preclude Defendants' Expert Leon Feazell (Doc. 191)

Plaintiff also requests that the Court preclude the testimony and opinions of Defendants' expert Leon Feazell on the basis of several statements taken from Feazell's report that Plaintiff claims "are not proper expert opinions" because they are allegedly legal conclusions. (Doc. 192, at 6-8). Specifically, Plaintiff requests that the following statements be precluded:

> [T]here is not any evidence to infer Mr. Green's actions were negligent, careless and/or his operation was in a reckless manner.
>
> [T]here is not any evidence to infer FFE's conduct was negligent, careless, gross, wanton and/or reckless in any manner.
>
> Mr. Botey failed to exercise due care of an ordinary person under the same or a similar event or circumstance. Immediately preceding the crash, Mr. Botey may have suffered a medical emergency, his attention may have been diverted from the driving task to focus on some other activity, or his action may have been deliberate.

12

(Feazell Report, at 9).

Plaintiff argues that the first two statements are "not proper expert opinions and therefore Mr. Feazell must be precluded from offering th[ese] legal conclusion[s] as it usurps the role of the jury." (Doc. 192, at 6-7). In response, Defendants contend that "testimony defining [a] term of art as it is used within [a] given field may be allowed [and] testimony that the specific item or event fits within the meaning of [a] statutory term maybe admissible under Fed. R. Evid. 702 and Fed. R. Evid. 704(a) even if it embraces an 'ultimate issue.'" (Doc. 200, at 6).

As explained by the Third Circuit,

> The District Court has discretion to determine whether expert testimony will help the trier of fact. *United States v. Agnes*, 753 F.2d 293, 303 (3d Cir. 1985), *abrogated on other grounds by Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998). In utilizing that discretion, however, the District Court must ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. *United States v. Leo*, 941 F.2d 181, 195-96 (3d Cir.1991). Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury. *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (per curiam).

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

Here, the Court must await Feazell's testimony at trial. Feazell's "experience in the field of accident analysis, commercial motor vehicle safety operations, safety compliance/enforcement, and safety administration" (Feazell Report, at 10) qualifies him to opine as to the evidence, or lack thereof, demonstrating whether one or more of the

13

defendants' conduct violated the standards governing tractor-truck drivers and their employers. Although Plaintiff is correct that Feazell is precluded from rendering a legal opinion, it is not clear that Feazell's statements are currently offered as such. While Feazell will be permitted to detail the facts that he has relied on and the opinions that he has reached based on these facts and his expertise in the field, the ultimate issue of Defendants' negligence shall be reserved for the jury. If, at trial, the context of Feazell's testimony, together with any subsequent questions posed to Feazell, leads Plaintiff to believe that Feazell is attempting to offer legal opinions which invade the province of the Court, then such objections may be raised, and will be ruled upon at that time.

Plaintiff further objects to the following two sentences in Feazell's report:

> Mr. Botey failed to exercise due care of an ordinary person under the same or a similar event or circumstance. Immediately preceding the crash, Mr. Botey may have suffered a medical emergency, his attention may have been diverted from the driving task to focus on some other activity, or his action may have been deliberate.

(Feazell Report, at 9).

For the reasons discussed immediately above, the Court will reserve ruling on whether Feazell's first statement is an impermissible legal opinion.

The Court will further reserve ruling on the admissibility of the second sentence of Feazell's statement until the time of trial. Having not heard any testimony in this action, including any testimony by Feazell, the Court has no way of knowing whether Feazell's

14

opinion is "pure speculation" and without any evidentiary support as Plaintiff asserts (*see* Doc. 192, at 8).

For the foregoing reasons, the Court will reserve ruling on Plaintiff's motion to preclude the testimony and opinions of Dr. Feazell.

## 5. Conclusion

For the foregoing reasons, Plaintiff's Motions (Docs. 197, 195, 191) will be decided as set forth in this Memorandum Opinion. A separate Order follows.

Robert D. Mariani
United States District Judge