THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JONATHAN BOTEY,

      Plaintiff

v.

ROBERT GREEN, et al.,

      Defendants

3:12-CV-1520
(JUDGE MARIANI)

FILED
SCRANTON

JUN - 9 2017

PER_____
DEPUTY CLERK

## MEMORANDUM OPINION

Presently before the Court are Defendants' following motions in limine:

1. Motion in Limine, or Alternatively, Request for a *Daubert* Hearing, to Preclude the Testimony and Opinions of Whitney Morgan (Doc. 154);

2. Motion in Limine, or Alternatively, Request for a *Daubert* Hearing, to Preclude the Testimony and Opinions of Kevin O'Connor (Doc. 156);

3. Motion in Limine to Preclude the Use of or Reference to the Commercial Driver's License Manual at Trial (Doc. 164).

The Court will address each motion in turn. Before doing so, however, the Court notes at the outset that it exercises its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While motions in limine may serve as a useful pretrial tool that enables a more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity."

*Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *Japanese Elec. Prods.*, 723 F.2d at 260).

"[M]otions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemetech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Specifically, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis original). Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).

With respect to expert testimony, the Rules of Evidence, and Rule 702 in particular, assign the trial Court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Pursuant to Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The inquiry under Rule 702 is "a flexible one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). The overarching subject of the Rule is "the scientific validity and thus the evidentiary relevance and reliability - of the principles that underlie a proposed submission." *Id.* at 594-595.[1]

Furthermore, Rule 703 is instructive.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Finally, in assessing a proffer of expert testimony under Rule 702, a Court must also take into consideration other applicable rules, including Rules 703, 706, and 403. *Daubert*, 509 U.S. at 595.

---

[1] Although *Daubert* held that Rule 702 imposes an obligation on the Court to "ensure that any and all scientific testimony . . . is not only relevant, but reliable", this gatekeeping obligation has subsequently been extended to all expert testimony and is not limited only to "scientific" testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

3

With these principles in mind, the Court now turns to Defendants' afore-listed motions.

### 1. Motion in Limine, or Alternatively, Request for a Daubert Hearing, to Preclude the Testimony and Opinions of Whitney Morgan (Doc. 154) [2]

Defendants request that the Court preclude the testimony of Plaintiff's expert Whitney Morgan on the basis that Morgan's "opinions asserting that defendant Green was an inexperienced entry-level driver", that Green "did not satisfy the requirements of the CDL Manual" and that Green fell below the standard of care for professional truck drivers are all inadmissible opinions. (Doc. 155, at 3, 4, 6).

With respect to Defendants' contention that Morgan's "opinions asserting that defendant Green was an inexperienced entry-level driver" are inadmissible, Defendants fail to explain why such a statement is inadmissible. Defendants argue that "there is no criterion that prohibits so called entry-level truck drivers from obtaining gainful employment" and that the "regulations do not bar so called inexperienced entry-level truck drivers from operating CMVs so long as the . . . criteria are met." (Doc. 155, at 3). This is proper material for cross-examination and goes to the weight of Morgan's opinion. However, this is not a reason to preclude this expert's characterization of Green's experience. Furthermore, although Defendants conclude that "Morgan's opinion regarding Mr. Green's inability to

---

[2] At the time of the pretrial conference, the Court asked Defendants' counsel when he would like to have a *Daubert* hearing with respect to Morgan. At that time, counsel for the Defendants informed the Court that they were no longer requesting a *Daubert* hearing with respect to Morgan. Therefore, to the extent that Defendants' motion requests a *Daubert* hearing on Morgan, the Court will deem such request as withdrawn.

4

safely operate his CMV due to lack of experience or being an entry level truck driver is inadmissible" (Doc. 155), this seemingly mischaracterizes Morgan's conclusions. Rather, Morgan stated that "FFE demonstrated a disregard for the safety of the motoring public by assigning and/or employing an entry-level truck driver, Mr. Green, *who had demonstrated his incompetence during his training*, to operate a commercial motor vehicle on their behalf." (Morgan Report, at 12) (emphasis added).

Defendants next argue that Morgan's opinion that Green did not satisfy the requirements of the CDL Manual are inadmissible because the CDL Manual is not "the law" in Pennsylvania and the Manual is not admissible at trial for the truth of its contents "as they are merely authoritative texts." (Doc. 155, at 4-5).

Defendants rely repeatedly on the Superior Court of Pennsylvania's opinion in *Christiansen v. Silfies*, 667 A.2d 396 (Pa. Super. Ct. 1995). In *Christiansen*, the trial court precluded reference to the Pennsylvania Commercial Driver's Manual. In affirming the trial court's preclusion of this evidence, the Superior Court explained:

> Authoritative texts are not admissible for the truth of their contents; they may not be read to the jury or admitted as substantive evidence. However, such manuals or texts may be used to cross-examine experts as to their familiarity or concurrence with the information, after the material has been established as standard and authoritative by expert testimony.
> Here, *appellant did not offer to present any expert testimony to establish the manual as an authoritative text during trial*, despite her argument to this court that certain of her expert witnesses could have done so. Under these circumstances, we cannot hold that the trial court abused its discretion in precluding reference to the manual as presented by appellant.

*Christiansen*, 667 A.2d at 478 (internal citations omitted) (emphasis added).

5

In the present case, Morgan's report summarizes what he deems to be relevant portions of the CDL Manual. At this time, there is no indication that he intends to read portions of the Manual into evidence[3] or that he will attempt to inform the jury that the CDL Manual is law. Defendants' argument reads as if they expect that experts must only rely on law and regulations in forming their opinions, which is clearly not the case. Rather, as counsel is well-aware, experts are permitted to rely on facts or data in the case that the expert has been made aware of or personally observed in reaching their conclusions. *See* Fed. R. Evid. 703.

Furthermore, Morgan's report states that "[t]he standards established for CDL drivers are enumerated in the FMCSRs Commercial Drivers Standards, as well as the CDL Manual. . . ." (Morgan Report, at 9). As such, as the Manual is at least one of the bases on which a CDL is issued, it is relevant and probative to the issues in this case. The CDL Manual provides a standard by which a particular action in the commercial driver field may be judged. It is therefore presumptively relevant given that the document offers driving instruction for commercial motor vehicle drivers, such as Green. This information, and Morgan's explanation of its application, will be helpful to a jury in understanding the instructions Green was, presumably, aware of when driving and what training he had, or should have, received.

---

[3] Plaintiff admits that manuals cannot be read to the jury. (Doc. 222, at 8).

At trial, should Morgan testify as to the authoritative nature of the CDL Manual and establish that it is a document upon which experts in his field generally rely, he will be permitted to explain the relevant CDL Manual requirements and the extent to which he relied on the Manual in forming his opinions. Although the Manual itself may not be admissible at trial, Morgan is entitled to rely on it in offering his opinions.

Defendants briefly argue that Morgan's opinion should also be precluded because he "failed to indicate the CDL Manual he relied on to reach his conclusions" and "failed to specify the edition of the CDL Manual he referred to." (Doc. 155, at 6). This argument is proper material for cross-examination, but the Court will not preemptively bar Morgan's testimony on this basis. For the argument to have any substantial merit, Defendants must show that there is some substantive difference between the CDL Manual utilized in Tennessee and the CDL Manual in Pennsylvania that is relevant to the conduct of commercial motor vehicle drivers and their employers in this case. Defendants have not attempted to do so and the Court is unwilling to grant Defendants' motion based on such an undeveloped argument.

Finally, Defendants assert that "Morgan's opinions that Defendant Green fell below the standard of care for professional truck drivers are inadmissible." (Doc. 155, at 6-7). As this Court has already granted Defendants' request that counsel and lay and expert witnesses avoid using the word "professional", this ruling is equally applicable to Morgan. (*See* Docs. 296, 297). Further, to the extent that Defendants raise a concern that Morgan

7

will state or infer that Green or any commercial motor vehicle driver is subject to an increased or higher standard of care, the Defendants will be expected to timely raise their objections, as they arise at trial, with respect to any attempts they believe Morgan is making to imply a higher standard of care is applicable to commercial motor vehicle drivers than to other motor vehicle drivers.

For the aforementioned reasons, Defendants' motion is denied.

## 2. Motion in Limine, or Alternatively, Request for a Daubert Hearing, to Preclude the Testimony and Opinions of Kevin O'Connor (Doc. 156) [4]

Defendants argue that O'Connor's "opinions asserting that the Plaintiff could have applied his brakes and may not have left visible skid marks is inadmissible" and that O'Connor's opinions that Green "did not satisfy the requirements of the CDL Manual" are inadmissible. (Doc. 157, at 3, 4). Defendants further argue that O'Connor's "opinions that Defendant Green's actions caused the accident because he decided to stop his tractor-trailer for some other reason before the impact constitute inadmissible speculation and conjecture." (Doc. 157, at 6).

Defendants assert that the following opinion by O'Connor is speculative and thus inadmissible:

> In my opinion, Trooper Nalepa's inference [that Botey did not apply his brakes] was unwarranted. An application of a vehicle's brakes doesn't

---
[4] At the time of the pretrial conference, the Court asked Defendants' counsel when he would like to have a Daubert hearing with respect to O'Connor. At that time, counsel for the Defendants informed the Court that they were no longer requesting a Daubert hearing with respect to O'Connor. Therefore, to the extent that Defendants' motion requests a Daubert hearing on O'Connor, the Court will deem such request as withdrawn.

8

> necessarily result in skid marks. Even in an emergency situation under hard braking, a vehicle equipped with ABS, like Mr. Botey's SUV may not leave visible skid marks.

(O'Connor Report, at 6). Defendants argue that this statement is unsupported by any "study or research that supports his conclusion" and that there is "nothing in the [2000 Oldsmobile Bravada owners-manual] to the extent that a vehicle would never leave skid marks. . . . " (Doc. 157, at 3). Once again, Defendants' concerns are better addressed on cross-examination and go to the weight of the O'Connor's testimony rather than its admissibility. Assuming O'Connor is admitted as an expert in engineering and accident reconstruction and is able to establish that such an opinion is within his area of expertise, it is admissible expert testimony as it will aid the jury in determining a fact in issue by providing scientific, technical, or other specialized knowledge that would otherwise be outside the lay understanding of a juror.

With respect to Defendants' argument that O'Connor's opinions that Green did not satisfy the requirements of the CDL Manual are inadmissible, the Court has addressed this virtually identical issue with respect to Morgan, *supra*, and will deny Defendants' motion on those grounds. To the extent that Defendants accuse O'Connor of "cherry-pick[ing] provisions of the Pennsylvania CDL Manual" or argue that Green was only required to be familiar with the Tennessee CDL Manual (Doc. 157, at 5-6), such issues are proper for cross-examination and go to the weight of O'Connor's opinion and report as well as his credibility.

Finally, the Court rejects Defendants' argument that the Court should preclude O'Connor's opinions that Green's "actions caused the accident because he decided to stop his tractor-trailer for some other reason before the impact" for the reason that the opinions constitute "inadmissible speculation and conjecture" and are contrary to the testimony of Strauss. (Doc. 157, at 6-7). The fact that O'Connor's conclusion contradicts a witness's testimony goes to the weight of the testimony and is insufficient to allow this Court to preclude the expert opinion. Further, O'Connor's opinions are arguably reasonably based on the information set forth in his report wherein he describes the site of the accident, his accident analysis, and his time-distance analysis. (*See* O'Connor Report).

For the foregoing reasons, Defendants' motion will be denied.

### 3. Motion in Limine to Preclude the Use of or Reference to the Commercial Driver's License Manual at Trial (Doc. 164)

Defendants argue that the Court should preclude use of or reference to the commercial driver's license manual at trial because "it has never been offered by plaintiff, never been used or discussed in this case and is not binding law in Pennsylvania." (Doc. 165, at 2). Defendants' principal, and repeated, arguments are that the CDL Manual is not admissible for the truth of its contents as it is "merely an authoritative text" and that because it is not the law, it cannot be used to establish negligence or create any legal duty. (*See* Doc. 165, at 3-6).

Defendants' argument mirrors that set forth in their Motion to preclude the testimony and opinions of Morgan. For the same reasons as the Court stated when addressing that motion, Defendants' motion is denied.

4. **Conclusion**

For the foregoing reasons, Defendants' Motions (Docs. 164, 156, 154) will be decided as set forth in this Memorandum Opinion. A separate Order follows.

Robert D. Mariani
United States District Judge